All right, now we're ready for argument. There will be a 10-minute recess after the second case. And we're ready for argument now in Mullen v. GLV. Mr. Tvetsky. Good morning, and may it please the court. It's nice to be back here in person. You're the first actual lawyer that I've heard of, Mr. Tvetsky, so it's nice to see you. Yes, it is good to be here in person. The district court's grant of summary judgment in this case contains two major flaws. First, the district court skipped over the defendant's summary judgment burden, improperly granting summary judgment where defendants hadn't demonstrated that they were entitled to judgment as a matter of law. That's on the unfair prong of the Consumer Fraud Act claim. Second, the district court held that because Ms. Mullen had some knowledge that Ricky Butler had been accused of child sexual abuse, that it was unreasonable as a matter of law for her to believe or rely on his denials and omissions on that topic and on those of the other defendants. Yet in the very same order, the district court went out of its way to point out that it didn't have enough information to, one way or the other, decide whether those allegations were true.  is looking at, what included all of the information Ms. Mullen allegedly knew, and then said. Counsel, I am not at all sure why we are here. The district judge said, in one of his opinions, that it appeared that Ms. Mullen was not an appropriate class representative. It was no matter exactly what she knew, she knew a lot more than the other members of the class. The district judge also said that it did not appear that Mullen had suffered any injury from claimed violation of these statutes. And so the district judge said that in order for this case to continue as a class action, somebody else had to come in and take over the role of representative plaintiff. That does not appear to have happened, right? No. It didn't happen. And the district judge's conclusion that the case lacked standing with Ms. Mullen as the plaintiff, your brief entirely ignores. So why are we here? Why is there an ongoing case or controversy? Why is Mullen a permissible class representative? So I would like to be clear about the, and I will open up the opinion here just to make sure that I don't misstate anything. With respect to standing, the district court found that there were some claims on which there was standing and some claims on which there were not standing. And the claims on which the judge said there was not standing appear to be the only two claims raised in your appellate brief. I don't think that's true. Two state statutory claims in which the judge said your client couldn't show any injury. The district court found that Ms. Mullen had standing to pursue all of the fraud-based claims, including the statutory ones, and that she didn't have standing to go upon procedural claims under the Physical Fitness Services Act. So could I ask you maybe a related question? Whether this appeal, I mean, I took the class action to be dead because you never did come in despite several invitations by the district court with a substitute class representative. Is this appeal only in her individual capacity? Well, this is an appeal as to summary judgment, so the class certification order is not up. So it's her individual case with respect to these theories. Correct, and then the district court, if the case is remanded, will determine, based on this court's decision, whether or not the case can proceed as a class action. We think it still can. We think that many of the things in the class certification order conflict, even though they're based on the same information, conflict with what the district court said at summary judgment. And so if this court agrees with us as far as what Ms. Mullen needs to prove in order to cover under the Consumer Fraud Act. But he does still think, I mean, there's 23A to think of. I'm looking at his final order because I had very much the same questions Judge Easterbrook is raising. And he wraps it up because plaintiff files a status report saying that she doesn't intend to substitute a class representative. The court therefore directs the clerk to enter judgment dismissing the case in its entirety. There's nothing ambiguous about that. And what I didn't see in your brief, maybe you were busy trying to defend her as a possible class representative, but very often when the class goes away, somebody says, but I still have an individual claim, but I don't see that. Okay, I think I understand the question here. I don't believe that the class has gone away. There was never an order decertifying the class. It's dismissed, it loses, that's what happens. That's correct, and so we've appealed on behalf of Ms. Mullen and on behalf of a certified class, but Ms. Mullen has lost her individual claim. If that claim is resuscitated, that is a prerequisite. If there is no certified class, you can't appeal on behalf of a certified class. I'm sorry? But if there is no certified class. There is a certified class, Your Honor. What is this case doing in federal court? This is a state law claim. Yes, Your Honor, this was a certified class action. It was brought under the. But if it's not a class action now, it's a state law claim on behalf of a single person, and there's no diversity. No, Your Honor. And even if there were, it would be covered by the Class Action Fairness Act's exception for single state actions, because this is an Illinois action. I'm now, so I've got my original question, which is, what is this case doing in court, period, is now, what is this case doing in federal court? Sure, I can give you two answers to that. First of all, this case is still a class action. There was never an order decertifying the class. There was a judgment entered. There was a class certification. So I don't think that's really in question here. With respect to whether there's federal jurisdiction here, again, I don't really think there's a question. This case was. So you're resting on the Lanham Act, or sorry, what? On the provisions of CAFA, there was no, with respect to, I understand. No, the Class Action Fairness Act has an exception for actions centered in a single state. As this case has come on the Court of Appeals, the only arguments being made rest on two Illinois statutes, which apply only in Illinois. They don't apply in any other state. And there is a single state exception to the Class Action Fairness Act. My question repeats, why are we here? My understanding, with respect to that exception, is that it's, in this court, considered a matter that has to be raised by one of the parties and is waived if not. So you see this as not, are you looking at Morrison against YTB? This court has said that 1332 D4 is more like abstention than jurisdiction, which would be your only argument here, I think. If it's an abstention sort of doctrine that needs to be raised, then it's forfeitable. There are other things. It's not jurisdiction. Courts can raise abstention on their own. Consider it to have been raised. There's also a question, I think there's a question as to if a certain percentage of the class needs to, or the class as pleaded would. Look, since the only arguments being made rest on Illinois statutes, it can concern only residents of Illinois. Well, that's not entirely accurate, no, Your Honor. The defendant here is an Illinois facility, but they bring in, because it is a large facility, there are many class members who do not, who are not citizens of the state of Illinois, including people who have moved away, but also people who live in Indiana or Wisconsin and are still class members here. So I don't think this involves only citizens of Illinois here. And again, nobody has raised the other. We do not count as nobody. I'm sorry, no party has raised the other. As I say, courts can raise abstention on their own. Consider it raised. Understood. If the court sees abstention as appropriate, I think there's very little that I can do about that. Other than to say that I don't, I cannot tell you and I don't believe that it is in the record, the percentages. That's what I was about to ask you. To what extent does the record reflect the citizenships of the unnamed members of the class? There was notice provided, although the class as certified was smaller than the class as pleaded. It would be the class as pleaded that would govern whether or not that exception would apply. And because that class wasn't certified and because none of the parties raised abstention, we don't know whether the requirements for the percentage of citizens in the class would meet the abstention rule. There's not information about that in the record, at least as far as I'm aware. If there's so many class members, why is Ms. Mullen the right one for this case? We believe that, as the district court explained in its class certification order, that she meets all of the requirements of rule 23 and that the issues that were pointed out with respect to her are not particularly important and don't make her inadequate or make her atypical. I'm surprised that you say that though. I mean, just mildly, she had red flag after red flag about Butler. And the fact that she wasn't at least on inquiry notice that this person was bad news, she had known forever and she keeps enrolling her daughters in these GLV programs. So I would like to be clear about that because I think there is some confusion here. So she did not know. What she had seen were news articles. Those news articles contain accusations of bad conduct by Mr. Butler and they contain, all of them contain Mr. Butler's strident denial that he's done anything wrong. And those are, I think that those news articles would be raised with respects to any class member that we brought up here. I think that defendants would come back and say, but look, these accusations are in the news. And my answer to that is that there is a difference between accusations and allegations, which is all that Ms. Mullen or any class member has and knowing what actually happened, knowing what Ricky Butler actually did, which is something that defendants do know here. Mr. Tversky, just so we're all clear, if the defendants are denied summary judgment, is it your idea that this case would proceed with a trial within a trial as to whether Ricky Butler sexually assaulted five girls between 1981 and 1987? Is that what the plan is here? It depends on what the defendants concede and what they don't. At the current moment, Ricky Butler has denied that he did those things. So that would have to be a question for the jury. We have affidavits explaining what Ricky Butler did in great detail, and we have Mr. Butler's sworn denial of it. And so the question of, well, did Mr. Butler fail to disclose a material fact to this transaction? And is that fact material? Those are jury questions. I don't think it would be difficult for a jury to conclude that it is material to the sale of youth volleyball coaching services to know whether or not the coach has a history of violently raping the players. So is your answer yes or no, that it would basically be a trial within a trial? I don't think it would be a trial within a trial, Your Honor. I think if the defendants decided to put on the defense that no, these statements were not fraud, that the statements were not deceptive because these things didn't happen, then the jury would have to decide that question. If the defendants decided to admit for the purpose of the trial that this happened and focus on other matters, then it wouldn't be necessary. So it's really up to them. It's hard for me to see how something is deceptive if the person already knows about that fact. She knew about the allegations since at least 2015. And she also knew about Mr. Butler's denials. In fact, the record shows that she didn't- But all sorts of people deny these things. Larry Nassar denied them too. But you need to A, look into them, or B, decide whether you wanna risk sending your children to something that there's a cloud over. I think, Your Honor, I've hit upon a causation question here. So the question is, was it knowledge of the allegations that caused, that should have caused the damage here, or is knowledge of the allegations not enough? Somebody having a cloud of suspicion over them in this country, I don't know that we believe that to be disqualifying to- Well, this is a business transaction. I mean, it's an individual consumer deciding where to send her children for this kind of athletic facility, the youth sports club, volleyball. And the question is, was there a deceptive practice? Well, his record was known, or at least the allegations about his record were known. So she can't have been deceived that there were at least allegations. We still don't know, perhaps, whether there was truth behind them or not, that her case can't depend on that. And so the- That's really Judge Rovner's question in a way, but it's- I think the case does depend on that, because if the allegations are not true, then it was reasonable for her to rely on, on, she has no case, right? She relied on Ricky Butler's denials, his denials were true, nothing's been deceptive. In what way is the value of the, of the coaching services less? If the supervisor of those services committed sexual assault of teen girls, then if he'd been merely accused of sexually assaulting girls, in other words, does Mrs. Mullen claim that she would have paid less for coaching services at GLB than elsewhere, because I would have to pay someone to supervise my child at all times, or is it the coaching services are worth less to me because I would lose sleep or worry all the time? In other words, I'm trying to figure out what is the nature of the diminished value to you. Yes. The value of what they were selling, which is coaching services by someone who's been falsely accused of rape, is, I think we can say, there is a market value for that. The market value of coaching services by somebody who has a history of raping the players that he coaches, particularly here, where this is a travel club, and he has been, and he has actually, and he's actually sexually assaulted players while traveling, a jury could reasonably find that that service does not have any value in the market, that no reasonable parent would pay for such a thing, because that person cannot be trusted to supervise children. In other words, that the value of the service, and I think this is very similar in that respect to the Van Zandt case, where we're looking at pet food that was advertised as being prescription, there was no allegation that the food wasn't as good or didn't have, didn't cure the illness, but it was merely that it was not what it was sold as, and what it was sold as was more valuable. I think, if there, I'd like to remain, reserve the remaining time for rebuttal. Certainly, counsel. Ms. D'Ambrose. May it please the court. Good morning, your honors. My name's Danielle D'Ambrose, and I represent the defendant appellees, Rick Butler, Cheryl Butler, and GLB, Inc. Laura Mellon-Lawson is our judge. And may I start you off, let's go back in time to 2013, when Ms. Mellon first signed up at GLB, before she was on the websites, you know, Facebook, whatever, where Ricky's path was being debated. Is it your position that a parent has a duty to Google every teacher, daycare worker, camp counselor, coach, et cetera, to see if they have a history of abuse? In other words, a camp or gym or afterschool program can hire people with records of child abuse. And it's the responsibility of the parent to check. And as long as the information is out there somewhere on the internet, the organization is off the hook. So I think that that question raises a few, a few different answers. So I don't think that we're, no, I do not think that there is a duty to Google and search the internet in hopes of finding any sort of public information of anyone you, you know, a parent would decide to trust their children with. However, in this case, we were presented with a different set of facts. And we're, as far as the records of abuse go, you know, in this case, there's, there are allegations out there and there are factual findings that were made, you know, that were supposed to be protected by laws of confidentiality because the standards used by DCFS are very low because the interests that they're protecting are very important. Same goes for USAVs proceedings. The other issue that this raises is that the nature of these allegations has changed significantly throughout the years. Whereas when this was first raised, there were not accusations of rape. It was accusations of inappropriate relationships with players who are above the legal age of consent and who he had continued relationships with well into their 20s. Now it's a very different, now it's a very different allegation that we're dealing with. But to answer the question directly, no, I don't think that that's the, that's anything that the defendants are standing for in this case, that this is, this was somehow required of Mullen. But what we do know is that Laura Mullen was publicly discussing these allegations in as early as 2015. Mullen was evasive in her discovery responses as to when she actually learned about this information. We do know she learned about it from other parents at the club, she says, which is not where, you know, which is not finding it online. So when that happened, we don't know. It's more than likely that when Mrs. Mullen signed her daughters up to play for volleyball, she would have had to Google sports performance. And the ESPN article referenced in Laura Mullen's complaint, and which is, it was in the record at summary judgment, states that a simple Google search of Rick Butler and the word volleyball, the allegations are, the allegations come up on Google. So the fact that she had to sign her daughters up online, that she did say that she researched the volleyball club to the extent that she could reference certain disclosures or certain misstatements that she claimed were made in their website, raises the issue of, well, did those search results come up as well when she was searching and she either read them or ignored them? So on summary judgment, the defendants showed that Mullen's claims weren't true. The information she said was hidden from customers was widely reported. She said she didn't see any information online when she had been in reality discussing it for years. Mullen said that no reasonable parent would pay for GLV for any GLV associated programs if they knew the facts. And then Mullen sent her daughter back to GLV after filing her lawsuit. The court needs to, the court should uphold the district court's decision and to do so, the court need not look further than the proximate cause and the reliance elements. But first I want to discuss that the factual theory that's presented by Mullen in this appeal is not the same factual theory that was presented before the district court on summary judgment. And that theory was wholly contradictory to the theory that she filed this case based upon, which is that she didn't know any of this and that there was widespread suppression of information and that the Butler's threatened these victims and every attempt for them to discuss this publicly was concealed and suppressed. When defendants filed a motion to dismiss early on in the case, we asked the district court to take judicial notice of several publicly available articles about the allegations. And in response, plaintiff argued that the judicial notice would be improper because none of the articles were referenced in the complaint, which was not true. And she claimed that they were inconsistent with her claims that she did not see any information online until June of 2017 due to the defendant's concealment. Plaintiff ridiculed the idea that she was somehow required to scour the internet for this information, knowing full well that one of the articles that defendants attached to their motion to dismiss was one of the articles that she had publicly discussed while her daughters were playing for the program. Was this on this volley talk discussion forum? Yeah. Yes. Until summary judgment, Mullin's claims rested upon her assertion that she and all members of the class sent their children to GLB without knowledge of any of the accusations. So when defendants filed their motion for summary judgment, they did so based on that theory. We included Mullin's own admissions that she knew about the accusations well before June of 2017. On summary judgment, Mullin, instead of facing those facts and facing the contradictions that were clearly apparent in the evidence, she introduced a new theory. And for the first time in the lawsuit said, no way, everyone knew about the allegations. We all knew. It was, of course we generally knew, but there was certain key information she claims was withheld from the public, that it was non-public that the USAB and the DCFS made findings as to credibility determinations and she claimed that she was entitled to that information and that the defendants had a duty to correct the publicly available information. Ms. Dombrowski, you've gotten a long way into your argument without discussing the antecedent questions, which Judge Wood and I asked and which you also need to address. Does the plaintiff have standing? If the plaintiff has standing, is this case properly in federal court under the Class Action Fairness Act? Can Mullin represent a class? These were things that were addressed by the district court that I had expected to find the parties discussed in their briefs and which you didn't discuss any more than the plaintiff did but we are here now and they need to be discussed. And it would also help me if you, in discussing them, furnish whatever information you have about the way in which you may have preserved objections to these problems in the district court. So as far as standing, are you asking just standing in general or as to under a specific theory? Let me clarify. You were listening to the argument during your colleagues' discussion. I suggest you cover the same topics. I mean, you could start with whether she's even a member of this class that she's trying to represent because her knowledge may or may not be exactly the same as the knowledge of other potential members of the class. And you could certainly also focus on whether the overwhelming majority of people in this class, the percentage specified by CAFA, were Illinois citizens. So to the extent that whether Mullen's part of the class, I think it depends on what theory plaintiff is proceeding under. I mean, at class certification, defendants certainly argue that Laura Mullen's theory was that none of the class members knew this information, but it was evidence that she did know that she was discussing these things online and that set her apart from the class, that she knew what she claims that the class didn't know and that she was not typical of the class. So she failed. You must have then argued that pursuant to 23A, she failed to show that her claims were typical of the other class members. Yes, those were all argued on the class certification phase. But of course, the court does certify though, right? Correct. The court certified and said that essentially those, that she didn't know enough to set her apart from the class that it was just the allegations and that there weren't these admissions. I don't know what the complication is. The class was certified. The district judge then said, from what I've seen now, Mullen is not a good class representative. Somebody else needs to intervene to take over as a class representative. That didn't happen. And the judge then ignored the problem and both the appellant and the appellees have ignored the problem. But we're not going to ignore the problem. What should we do? Well, I think that the court should have held the district court's decision or the court could decline jurisdiction and not hear this, I guess. I mean, it's the defendant's position that the court should uphold the district court's decision, which disposed of the case in its entirety. So in a sense, are you- No, you're just half standing. You're just, you know, you don't want us to consider that. I'm sorry, I didn't hear that. You don't, what you're saying basically is we should just go with the district court and not even get into the issue of standing. That's what you seem to be saying. Well, let me break it down into two possibilities. Are you saying that she has Article III standing in the sense that she's got a dispute with the defendants and, you know, damages perhaps would redress that dispute, et cetera, even if she may, under Rule 23A, have been an inappropriate class representative, you might be able to affirm on different grounds the district court's judgment if it were something like that. If, on the other hand, she flat out doesn't have standing to sue under Article III, then we need to take an entirely different approach to this case because that means there's no jurisdiction. That's a dismissal without prejudice because of, I mean, the court simply doesn't have power to act when Article III isn't satisfied. So I think we need some precision here. So it's a defendant's position that Bormann has suffered no recognizable injury. There was no Article III standing in general because she did not suffer any injury that would give rise to standing. She received- You know, there is a legal responsibility for lawyers to address jurisdiction in their briefs. You're now saying you think the plaintiff lacks Article III standing altogether. You're confessing dereliction of your duty. This has been very troubling to us. I suspect we're gonna need separate briefs, separate memoranda on issues that should have been fully explored but were just ignored by both sides. The standing question as it comes to us is not standing to sue on every theory the plaintiff raised, but is standing to sue under the two particular laws, the Consumer Fraud Act and the Physical Fitness Services Act that are actually before us. The fact that the plaintiff may or may not have had standing on other claims now abandoned wouldn't tell us whether she has standing on the Consumer Fraud Act and the Physical Fitness Services Act. So perhaps you could address standing on those two statutes in particular. Yes, Your Honor. And to sort of backtrack where it was, that is the argument that defendants set forth at summary judgment. At this point, I would say that the case more simply resembles and standing more simply resembles the first scenario described by Judge Wood where Mormon has now asserted that she has suffered this injury, that she is underneath both issues that were raised at the Illinois Consumer Fraud Act, that she's at least alleged it. I mean, I think that maybe I'm missing the point that the court is trying to get me to make here. And to that extent, I would like to then present a supplemental brief on the topic because I think that maybe I... Well, excuse me for interrupting you, but when you do that, I would recommend that both parties also take care not to confuse a merits determination that she wasn't injured such that she loses the case from an Article III determination that she hasn't even alleged injury because those are importantly different things. Understood. And of course, that still leaves dangling the question whether this case should be in federal court given the single state controversy exception to the Class Action Fairness Act. Okay. Are you aware of how many Illinois residents, these are the other state residents or part of the class as Judge Wood asked you earlier? Because I've wondered that as well. The amount of Illinois residents, I believe it's somewhere around 2000. I found somewhere in the record that the plaintiffs identified 78 putative members who live outside of Illinois. Now, whether they're actually citizens of the states where they reside is another question. But if that's the ratio, then the exception under CAFA certainly applies. That sounds correct. That it would be, it'd be a very 78. That sounds like a more precise number. It's limited to the sports performance program that was based in Illinois. So anyone coming from outside of the state would either have to live extremely close to Illinois and be traveling into the state, which isn't many people, or people who had moved out of state since then, which is not many people. So you think it might, I mean, maybe you should discuss this as well if there is any evidence in the record. But if it's 78 non-Illinois to 2000 Illinois, that pretty much disposes of that. Pretty much disposes of it. If there are 2000 total, there have to be more than 500 not from the state of Illinois, because it's a 75% line. Right. I'm sorry, I just, you're saying more than 2000 in Illinois, correct? And then 78 outside of Illinois. Just wanted to make sure I heard. Right. Maybe you can scour the record, when you respond to us. Sure. No, I just, I'm sorry. I just wanted to make clear that I was saying that correctly, that I know that it is 2000 in-state residents and then 78 out of state. Okay. So just to wrap up on your merits point, since conceivably this may become relevant, it sounds to me that maybe your primary point is that the plaintiff's theories have shifted considerably and that they haven't preserved the theory that they're now arguing before this court, that it was knowledge only of the allegations wasn't enough and they were also taking into account Butler's denials of these kinds of allegations and only later when the suit is brought, does Ms. Mullen finally know enough, although even then she sends one of the daughters to a summer program after the last time. But if that's your position, then that's fine. I just want to make sure I understand what you're saying. Yes. And to that extent on appeal, Mullen attempts to justify those actions by shifting focus to the level of supervision that Rick had over these programs in which her daughter participated and particularly those that took place after June of 2017, when she claims to have finally learned the truth of these allegations. In her brief on appeal, Mullen misstates an important fact though, which I think it's critical to understanding the distinction that's being made here, where she claims that sports performance refers to one specific elite program at GLB where Rick is a master coach of that entire program. That's incorrect. Sports performance is an umbrella term that's used to describe four separate volleyball programs. It's two girls' programs and two boys' programs, both high school boys, junior high girls, junior high boys. Rick Butler is only the master coach of one of those four programs. Each of the programs have different coaches, they have different master coach, they have different practice schedules, meaning that Rick doesn't have direct day-to-day involvement in the other three programs. This distinction is important because this plays the issue of Rick's level of supervision directly in front of the district court. And he's roaming around, right? I mean, he's there. Yes, yes, that's correct. But that's his right where his office is and that's exactly what the district court said. And that's what plaintiff argued in response to defendant's motion asking to clarify this court's order, the district court's order on that. And both the district court and agreed with Mullen's argument that it was the onsite programs where Rick Butler's office took place that could potentially expose their children to Rick and that was going to be the sort of the binding element that held the class together. And all three of the programs that Laura Mullen took her daughter to after she claims to have learned the truth of these allegations were all onsite programs at the Great Lakes Center where Rick Butler's office was. So her attempts to differentiate these programs on appeal fall short in light of that argument. And I see that I'm running out of time here. So I just ask that the court uphold the district court's judgment and we'll file a supplemental brief as requested by this court. Thank you, counsel. Anything further, Mr. Tiefske? Yes, very briefly. With respect to the difference between sports performance and GLV, when we're discussing sports performance here, we're talking about programs supervised by Ricky Butler. I would like to address the programs that Ms. Mullen sent her children to in September 2017 and 2018. There were two one-day clinics, lessons in 2017. The evidence in the record, this is appendix 88 to 89 in Ms. Mullen's declaration is that Mr. Butler was not present. The 2018 program was run by Ms. Mullen's daughter's high school. It was supervised by personnel from the high school. And the permission slip, in fact, said specifically, don't send this to GLV. This is a high school program. Again, the evidence of the record, appendix 89, is that Mr. Butler was not present. There's no evidence in the record that he was present. That is the only thing that is there. So that's a trial issue. It may well be, but at summary judgment, he wasn't there. With respect to Article III standing, I don't think there's a real question here. The district court determined that there was a financial injury alleged here that she did not get the value of the services that she was meant to have paid for. And we think that that's plenty of injury for Article III. In terms of the specific statutes, the Physical Fitness Services Act both permits damages and also voiding of a contract for misrepresentations and deceptions in concert with physical fitness contracts. That would also be enough for Article III standing. The problem the district court mentioned was the problem of reliance. Somebody who knows the truth or is in on inquiry notice can't claim reliance on a nondisclosure. The Consumer Fraud Act does not require reliance. Yes, well, but that's a problem, right? We now have a state law that says we're going to allow collection for fraud without proof of reliance. Is that a kind of claim that can be in federal court at all? I think it is. Ultimately, it's- It basically says we're going to allow recovery without proof of injury. I don't think so because proximate cause- Reliance is essential to injury. The Illinois Supreme Court has described it, and this court too, as proximate cause. That often takes the form of reliance, but it is important because what is required for under this statute is not that the purchase was caused by the deception, but that the damage, the injury, was caused by the deception. And so you can look at the injury in a little bit of a different way. You can look at it as she paid for a service that was represented to be a certain thing, and it was not that thing, and the value a jury could find is therefore less. That's the injury that is permitted to be recovered for. That has a solid foundation in contract law, in court law. I don't think that that presents a standing problem. Mr. Stachowski, forgive me, but the district court dismissed her as the class representative, right? No, I don't believe that's correct. The district court dismissed some of her claims without prejudice, but there was no finding that she was not an adequate or a typical or class representative. There was no decertification order. That's the problem. The district court said she was not a good class representative and then didn't follow up by decertifying the class or dismissing her claim. We will issue an order, counsel, your time has expired. We will issue an order later today calling for supplemental briefing. Understood. Judge Easterbrook, I have. Oh, certainly, Judge Rovner, please. But just out of pure curiosity, why when Ms. Ambrose calls him Rick, does your brief call him Ricky throughout? My understanding, I was told that that is his name. I could be wrong about that. I don't know, I've not met him, but that's what we named him as in the complaint. So that is the name that we've used. Okay. Thank you. Thank you, counsel. Thank you. When the supplemental briefs have been received, the case will be taken under advisement.